Dear Mrs. Ashford:
This is in response to your question:
 "Does the Missouri Air Conservation Commission have the authority under Chapter 203, RSMo, to compel air contaminant sources to disclose to the agency the types of information referred to in the attached letter from the Regional Administrator of the United States Environmental Protection Agency? Specifically, can the agency compel a source to disclose process descriptions and production data for operations which result in the emission or potential emission of air contaminants, and can the agency compel a source which is burning natural gas to disclose gas shortage projections, alternate fuel needs, expected increases in air contaminant emissions from alternate fuels, and the other information referred to on page one of the EPA letter?"
The EPA letter which you reference informs the state agency that certain information developed by the Federal Energy Administration with respect to the natural gas supply situation, can be made available to the state agency only if the conditions of40 C.F.R. § 2.301(h)(3), relating to the disclosure of confidential business information, are met. The same stipulation applies to the disclosure to the state of process descriptions and production data acquired by EPA personnel during inspections of air contaminant sources.
40 C.F.R. § 2.301(h)(3) provides that so-called confidential business information can be disclosed to the states only if one of two conditions are met. Your question goes to the first condition, which is:
 "The agency has first furnished to the EPA office having custody of the information a written opinion from the agency's chief legal officer or counsel stating that under applicable state or local law the agency has the authority to compel a business which possess such information to disclose it to the agency, . . ." 40 C.F.R. § 2.301(h)(3)(i).
The resolution of your question will necessarily provide the opinion called for in the federal regulation.
Section 203.050.1, RSMo Supp. 1975, provides that the Air Conservation Commission has the following powers, inter alia:
 "(3)(a) To require persons engaged in operations which result in air pollution to file reports containing information relating to rate, period of emission and composition of effluent;
* * *
 "(8) Develop such facts and make such investigations as are consistent with the purposes of sections 203.020, 203.040 to 203.100, 203.120, 203.140 to 203.170 and 203.190 and 203.195, and, in connection therewith, to enter or authorize any representative of the commission to enter at all reasonable times and upon reasonable notice in or upon any private or public property for the purpose of inspecting or investigating any condition which the commission or executive secretary shall have probable cause to believe to be an air contaminant source. . ."
The quoted passages from Section 203.050.1 appear to be a broad grant of authority to acquire facts relevant to the prevention, abatement and control of air pollution, the stated goal of the Air Conservation Law. Section 203.030, RSMo 1969. Moreover, the authority expressly conferred by Section 203.050.1 is enhanced by the doctrine of implied powers. An administrative agency not only has those powers expressly granted, but also by implication, such additional powers as are necessary for the due and efficient exercise of the powers expressly granted, or as may be fairly implied from the statute granting the express powers. Stateon inf. McKittrick v. Wymore, 132 S.W.2d 979 (Mo. Banc 1939). A statutory grant of power carries with it, by implication, everything necessary to carry out the power and make it effectual and complete. Id.
With respect to the first category of information mentioned in your question, process descriptions and production data, it is our opinion that the Air Conservation Commission can compel air contaminant sources to disclose such information. The specific grant of authority in Section 203.050.1(3) (a) refers to reports relating to "rate, period of emission and composition of effluent." However, it is obvious that such authority would be less effective if the agency could not check the accuracy of the information relating to rate, period and composition of emissions by reference to the production method and related data. We are also aware that the rate, period and composition of some air pollution emissions cannot be readily determined except by calculations based on production methods, rates and raw materials. Therefore, in order to carry out the statutory mandate to prevent, abate and control air pollution, the power to require submission of process descriptions and production data by air contaminant sources is necessarily implied from the power to require submission of information relating to rate, period and composition of emissions.
Moreover, the agency can require some information respecting process descriptions and production data in another way, irrespective of the desire of the source to disclose such information. According to the EPA letter, the subject information is being obtained by EPA personnel as they inspect air contaminant sources. Representatives of the Air Conservation Commission also have the power to inspect sources, and, if necessary, to obtain search warrants in aid thereof. Section 203.050.1(8). Thus, the agency inspectors can, for all practical purposes, compel the source to disclose such information by compelling the source to submit to the inspection.
With respect to the second category of information referenced in your question, data relating to the current natural gas shortage and its effect on air contaminant emissions, we are also of the opinion that the Air Conservation Commission can compel disclosure of such information by the affected sources. Disclosure of data relative to increased emissions of air contaminants, due to fuel switching, can obviously be compelled under the express authority to require disclosure of rate, period and composition of the effluents. Section 203.050.1(3)(a). Plant by plant projection of gas shortages and alternate fuel needs is the sort of ancillary information which the agency necessarily must have in order to make the emission increase data meaningful. Thus, the agency, by necessary implication, has the authority to compel the disclosure of such information.
The other information referred to in the EPA letter are such things as number and type of combustors at each plant, the firing rate of such combustors, the name and address of the source and its parent company, SIC (Standard Industrial Classification) Codes, and Federal Energy Administration identification numbers. This data appears to be the sort of information the agency would require in order to double-check the accuracy of emission data submitted by the source. Thus, such information would be necessary to the effective administration of the regulatory program. The Air Conservation Commission has the implied power to compel disclosure of such information, in order to carry out the powers expressly granted to the agency by the legislature.
Very truly yours,
 JOHN ASHCROFT Attorney General